1
2
3
4
5
6            UNITED STATES DISTRICT COURT
7           EASTERN DISTRICT OF WASHINGTON
8
CARRIE LYNN SELBY,                    )   No. 2:12-CV-00412-LRS
9                                      )
                    Plaintiff,         )   **ORDER GRANTING**
10                                     )   **DEFENDANT'S MOTION FOR**
          vs.                          )   **JUDGMENT,** *INTER ALIA*
11                                     )
CAROLYN W. COLVIN,                     )
12   Acting Commissioner of Social     )
     Security,                         )
13                                     )
                    Defendant.         )
14   _____ )

15       **BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment

16   (ECF No. 13) and the Defendant's Motion For Summary Judgment (ECF No. 19).

17

18                          **JURISDICTION**

19       Carrie Lynn Selby, Plaintiff, applied for Title XVI Supplemental Security

20   Income benefits (SSI) on August 14, 2008.  The application was denied initially

21   and on reconsideration.  Plaintiff timely requested a hearing and one was held on

22   April 26, 2010, before Administrative Law Judge (ALJ) R.J. Payne.  Plaintiff,

23   represented by counsel, testified at this hearing.  Steven Gerber, M.D., testified as

24   a Medical Expert (ME).  On May 6, 2010, the ALJ issued a decision denying

25   benefits.  The Appeals Council denied a request for review and the ALJ's decision

26   became the final decision of the Commissioner.  This decision is appealable to

27   district court pursuant to 42 U.S.C. §1383(c)(3).

28

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 1**

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. At the time of the administrative hearing, Plaintiff was 46 years old.  She has an eighth grade education and no past relevant work experience.  Plaintiff alleges disability since August 14, 2008.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.  *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence.  *Richardson*, 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ.  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 2**

proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred: 1) by failing to find that Plaintiff has a "severe" mental impairment; 2) by improperly discounting her credibility regarding her subjective complaints; and 3) in his determination of the Plaintiffs' residual functional capacity (RFC).

## DISCUSSION

### SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id.*

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. § 416.920(a)(4)(i). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past.  If the claimant is able to perform her previous work, she is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience.  20 C.F.R. § 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971).  The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ALJ'S FINDINGS

The ALJ found the following: 1) Plaintiff has "severe" impairments which include hypertension, degenerative disc disease, and obesity; 2) Plaintiff does not have an impairment or combination of impairments that meets or equals any of the impairments listed in  20 C.F.R. § 404 Subpart P, App. 1; 3) Plaintiff has the

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

1  residual functional capacity (RFC) to perform less than the full range of light
2  work; she can occasionally climb ramps or stairs, but should avoid climbing
3  ladders or scaffolds; she can occasionally engage in balancing, stooping, kneeling,
4  crouching or crawling; and she can occasionally tolerate exposure to unprotected
5  heights, moving mechanical parts, operating a motor vehicle, humidity and
6  wetness, dust, odors, fumes, and pulmonary irritants, extremes in temperature, and
7  vibration; 4) While the Plaintiff does not have the RFC to perform the full range of
8  light work, her additional limitations "have little or no effect on the occupational
9  base of unskilled light work" and therefore, a finding of "not disabled" is
10  appropriate under the framework of Medical-Vocational Rule 202.17, 20 C.F.R. §
11  404, Subpart. P, App. 2.  Accordingly, the ALJ concluded the Plaintiff is not
12  disabled.

13

14  **SEVERE IMPAIRMENT**

15      A "severe" impairment is one which significantly limits physical or mental
16  ability to do basic work-related activities.  20 C.F.R. § 416.920(c).  It must result
17  from anatomical, physiological, or psychological abnormalities which can be
18  shown by medically acceptable clinical and laboratory diagnostic techniques.  It
19  must be established by medical evidence consisting of signs, symptoms, and
20  laboratory findings, not just the claimant's statement of symptoms.  20 C.F.R. §
21  416.908.

22      Step two is a *de minimis* inquiry designed to weed out nonmeritorious
23  claims at an early stage in the sequential evaluation process.  *Smolen v. Chater*, 80
24  F.3d 1273, 1290 (9th Cir. 1996), citing *Bowen*, 482 U.S. at 153-54 ("[S]tep two
25  inquiry is a *de minimis* screening device to dispose of groundless claims").
26  "[O]nly those claimants with slight abnormalities that do not significantly limit
27  any basic work activity can be denied benefits" at step two.  *Bowen*, 482 U.S. at
28  158 (concurring opinion).  "Basic work activities" are the abilities and aptitudes to

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

do most jobs, including:  1) physical functions such as walking, standing, sitting,
lifting, pushing, pulling, reaching, carrying, or handling; 2) capacities for seeing,
hearing, and speaking; 3) understanding, carrying out, and remembering simple
instructions; 4) use of judgment; 5) responding appropriately to supervision, co-
workers and usual work situations; and 6) dealing with changes in a routine work
setting.  20 C.F.R. § 416.921(b).

The ALJ's determination that Plaintiff has a non-severe mental impairment
is supported by substantial evidence in the record.  During a January 3, 2009
"Psychological Diagnostic Evaluation," the Plaintiff stated to Nathan Henry, Psy.
D., that as long as she stayed on her Prozac, she was "fine."  (Tr. at p. 285).  Dr.
Henry diagnosed  Plaintiff with "Major Depressive Disorder, Recurrent, In Partial
Remission."  (Tr. at p. 288).  Dr. Henry concluded as follows:

> Ms. Selby reports a chronic history of depression symptoms,
> consistent with Major Depressive Disorder.  The symptoms
> have reportedly been managed well with antidepressant
> medication and Ms. Selby stated she was not experiencing
> significant problems with depression at the time of our
> interview.
>
> . . .
>
> Ms. Selby indicates that her medical problems and associated
> pain are the primary barriers to her ability to maintain employ-
> ment.  This was consistent with the reported history and presenting
> symptoms (i.e., her depression appears to be mostly in remission).
> Ms. Selby does not endorse problems relating with others and
> would be expected to be able to adequately relate to employers,
> co-workers, and the public.

(Tr. at p. 288).

Dr. Henry's assessment is consistent with Plaintiff's testimony at the
administrative hearing.  Asked "what health problems do you have that you feel
affect your ability to work," Plaintiff responded "it's just mainly the back pain and
I get tired real easily."  (Tr. at p. 57).  As the ALJ noted in his decision, the
opinions of the non-examining State Agency consultants were also consistent with
Dr. Henry's assessment.  (Tr. at pp. 290-302; 321).  In January 2009, Mary

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 6**

1  Gentile, Ph.D., concluded Plaintiff's affective disorder was "Not Severe" (Tr. at p.

2  290), and at most, caused "mild" limitations in activities of daily living, social

3  functioning, and in maintaining concentration, persistence, or pace.  (Tr. at p.

4  300).  The ALJ noted that because Plaintiff's "medically determinable impairment

5  causes no more than 'mild' limitation in any of the first three functional areas and

6  'no' episodes of decompensation which have been of extended duration in the

7  fourth area, it is nonsevere" per 20 C.F.R. § 416.920a(d)(1).

8      The Plaintiff had another psychological evaluation in September 2009, this

9  time by Mahlon B. Dalley, Ph. D..  Although Dr. Dalley rated Plaintiff's

10 depression as being of "moderate" severity with regard to its effect on Plaintiff's

11 ability to conduct work-related activities (Tr. at p. 408), and as having a

12 "moderate" impact on her abilities to relate appropriately to co-workers and

13 supervisors and maintain appropriate behavior in a work setting (Tr. at p. 410), he

14 also wrote that:  "At this time[,] features of Carrie's depression are not likely to

15 interfere with her ability to initiate or be successful in a normal employment

16 position; therefore it is estimated she will not be work impaired at this time."  (Tr.

17 at p. 414).  He added that "[s]ince physical problems were listed as Carrie's main

18 problem, a complete physical is recommended to determine if she would be work

19 impaired due to physical issues."  (Tr. at p. 414).  Thus, in the end, Dr. Dalley's

20 assessment is essentially not at odds with the assessment of Dr. Henry or with

21 Plaintiff's own testimony.

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

1    The ALJ did not err in concluding that Plaintiff's mental impairment is not

2    "severe."[1]

3

4    **CREDIBILITY/RESIDUAL FUNCTIONAL CAPACITY**

5    An ALJ can only reject a plaintiff's statement about limitations based upon

6    a finding of "affirmative evidence" of malingering or "expressing clear and

7    convincing reasons" for doing so.  *Smolen,* 80 F.3d at 1283-84.  "In assessing the

8    claimant's credibility, the ALJ may use ordinary techniques of credibility

9    evaluation, such as considering the claimant's reputation for truthfulness and any

10   inconsistent statements in her testimony."  *Tonapeytan v. Halter*, 242 F.3d 1144,

11   1148 (9th Cir. 2001).  See also *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th

12   Cir.2002)(following factors may be considered:  1) claimant's reputation for

13   truthfulness;  2) inconsistencies in the claimant's testimony or between her

14   testimony and her conduct; 3) claimant's daily living activities; 4) claimant's work

15   record; and 5) testimony from physicians or third parties concerning the nature,

16   severity, and effect of claimant's condition).

17   The ALJ offered "clear and convincing" reasons to discount the physical

18   limitations asserted by Plaintiff.  (Tr. at p. 33).  The most compelling of these is

19   that the RFC determination arrived at by the ALJ either does not conflict with the

20   opinions of any of the physicians who treated or examined the Plaintiff, or in some

21   respects is less than that opined by those physicians.

22   _____

23   [1] W. Scott Mabee, Ph.D., completed a DSHS "Psychological/Psychiatric

24   Evaluation" on behalf of the Plaintiff dated April 7, 2011.  (ECF No. 14-1).  This

25   evaluation was submitted to the Appeals Council.  As the Appeals Council noted,

26   the ALJ decided the Plaintiff's case through May 6, 2010 and since Dr. Mabee's

27   evaluation concerned a later period of time, it did not affect the decision whether

28   Plaintiff was disabled beginning on or before May 6, 2010.  (Tr. at p. 2).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

A. Peter Weir, M.D., examined Plaintiff in February 2009 and concluded she had limitations as a result of chronic lumbosacral strain, but remained capable of:  1) standing and/or walking for about six hours in an eight-hour day with breaks every two hours; 2) sitting for six hours in an eight-hour day with breaks every two hours; 3) lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; 4) frequently bending, stooping, crouching, and crawling.  Dr. Weir also opined that Plaintiff had no manipulative limitations, nor was she subject to any environmental restrictions.  (Tr. at p. 310).

Record show that Daniel H. Stoop, M.D., of the Deer Park Family Care Clinic, saw Plaintiff on a consistent basis from March 2006 to May 2008.  At the hearing, Plaintiff testified Dr. Stoops had been her doctor for approximately 15 years.  (Tr. at p. 61).  In August 2009, Dr. Stoops completed a "Physical Evaluation" for the Washington State Department of Social and Health Services (DSHS) in which he indicated Plaintiff's overall work level was "light duty" with restricted mobility, agility or flexibility in terms of balancing, bending, climbing, crouching, kneeling, pulling, pushing and stooping.  (Tr. at p. 340).[2]  The definition of "light" work used by DSHS- ability to lift 20 pounds maximum and frequently lift and/or carry up to 10 pounds; walking or standing up to six out of eight hours per day; or sitting most of the time with occasional pushing and pulling of arm and/or leg controls- is essentially the same as that under Social Security regulations, 20 C.F.R. § 416.967(b).

---

[2] Next to his notation regarding "light duty" is a notation regarding "treatment," although it is unclear whether Dr. Stoop intended to indicate that Plaintiff's ability to perform "light duty" work was contingent on her receiving treatment.  Even if that is the case, the Plaintiff's efforts to comply with recommended treatment were suspect, as pointed out by the ALJ in his decision, and as discussed below.

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 9**

At the administrative hearing, medical expert Dr. Gerber testified consistent with the "Medical Source Statement Of Ability To Do Work-Related Activities (Physical)" form he completed: that Plaintiff could frequently lift and/or carry up to 10 pounds, could occasionally lift and/or carry up to 20 pounds, could sit, stand and/or walk up to 6 hours in an eight hour workday, could occasionally climb stairs and ramps, balance, stoop, kneel, crouch and crawl, although she should never climb ladders or scaffolds; and could occasionally tolerate exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity and wetness, dust, odors, fumes, and pulmonary irritants, extremes in temperature, and vibration. (Tr. at pp. 49-52; 451-56). The opinion of a non-examining medical advisor/expert need not be discounted and may serve as substantial evidence when it is supported by other evidence in the record and consistent with the other evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

In December 2009, Plaintiff began seeing Sameer Jain, M.D., at the Community Health Association of Spokane (CHAS). He encouraged Plaintiff to exercise regularly and to start physical therapy. (Tr. at p. 348). After two weeks, Plaintiff reported that she was doing better since she had started exercising at home. (Tr. at p. 352). In late January 2010, Dr. Jain reported that Plaintiff was "doing better" since she started exercising. (Tr. at p. 361). In early March 2010, however, Dr. Jain noted that Plaintiff was not exercising as recommended and had not gotten an x-ray of her back performed. He advised her to get the x-ray done soon and indicated he would refer her to physical therapy that very day. (Tr. at p. 375). In early April 2010, however, Plaintiff again denied doing regular exercise and indicated she had not started physical therapy yet because she did not have gas money to get to the sessions. (Tr. at p. 381). Plaintiff reported the same on April 14, 2010. (Tr. at p. 386). The ALJ concluded this showed Plaintiff was not being cooperative with her doctor's efforts (Tr. at p. 33) and this appears to be a rational

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

1  conclusion.

2      Finally, the ALJ correctly noted the record does not indicate Plaintiff has

3  any difficulties with sitting.  Plaintiff testified she spends probably four hours a

4  day watching television (Tr. at p. 66).  She testified she enjoys spending time on

5  the computer and will sit at the computer for about an hour before she stands up or

6  lies down for awhile before she resumes sitting at the computer.  (Tr. at pp. 69-70).

7  Her hearing testimony was largely consistent with what she reported to Dr. Henry:

8  "She is able to do laundry and other household chores.  She shares the cooking

9  work.  She states she has to take frequent breaks due to the pain. . . .  Ms. Selby

10  states she watches a lot of TV, plays with her pets, plays with her computer a lot,

11  and likes to 'chat with my friends.'"  (Tr. at pp. 287-88).  It is also largely

12  consistent with what she reported to Dr. Weir: "The claimant states she is unable

13  to stand for any length of time.  As a result, it takes her all day to do the dishes.

14  She and her friend share the duties of cooking, cleaning and laundry.  The

15  claimant spends most of her day on the computer."  (Tr. at p. 306).  Her ability to

16  sit without difficulty was also consistent with Dr. Weir's personal observations:

17      She appears to have moderate discomfort when moving about.
18      The claimant arises easily from a chair and ambulates without
        difficulty and without assistance into the exam room.  She was
19      able to sit comfortably throughout the interview and examination.
        She had no difficulty removing or replacing her shoes and socks.
20      She had no difficulty getting on or off the examination table.
        She was easily able to return to a sitting position from the supine,
21      without assistance.

22  (Tr. at p. 306).

23      The ALJ offered "clear and convincing" reasons for discounting Plaintiff's

24  allegations regarding the extent of her physical limitations.  As such, his RFC

25  determination is supported by substantial evidence in the record.

26  //

27  //

28  //

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

1

**CONCLUSION**

2    Defendant's Motion For Summary Judgment (ECF No. 19) is **GRANTED**

3    and Plaintiff's Motion For Summary Judgment (ECF No. 13) is **DENIED**.  The

4    Commissioner's decision denying benefits is **AFFIRMED**.

5    **IT IS SO ORDERED.**  The District Executive shall enter judgment

6    accordingly and forward copies of the judgment and this order to counsel of

7    record.

8    **DATED** this ___24th___ of February, 2014.

9

10                           *s/Lonny R. Suko*

11    _____
                           LONNY R. SUKO
12                Senior United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 12**